Barclay White Co. (General Bldg. Contractors Assn., Intervener) *v.* Unemployment Compensation Board of Review, Department of Labor and Industry (Seifing, Intervener).

44

Argued November 27, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused March 24, 1947.

*Albert Smith Faught,* for employer, appellant.

*Edward Paul Smith,* for General Building Contractors Association, intervening appellant.

*R. Carlyle Fee,* Assistant Special Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General, and *James H. Duff,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*Frank B. Murdoch,* with him *James A. Sutton* and *Murdoch, Paxson, Kalish & Dilworth,* for John Seifing, intervening claimant-appellee.

OPINION BY MR. JUSTICE DREW, January 6, 1947:

This is an appeal by Barclay White Company from the judgment of the Superior Court awarding compensation to claimant, John Seifing, under the provisions of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended.

The question for decision is whether or not a member of a labor union is entitled to unemployment benefits when he has refused a referral to suitable work in an open shop, for the reason that to accept such employment would result in his suspension or expulsion from his union. In other words, we are called upon to determine whether claimant had good cause for his failure to accept suitable work when offered to him within the meaning of section 402(a) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, May 21, 1943, P. L. 337,[1] and section 4(r), as amended May 27, 1943, P. L. 717.[2]

The following findings of fact are supported by the evidence and, there being no fraud, are binding on us (Unemployment Compensation Law, supra, section 510): Claimant, who had been a member of the United Broth-

---

[1] "An employe shall be ineligible for compensation or waiting period credit for any week—(a) In which his unemployment is due to failure, without good cause . . . to accept suitable work when offered to him by the employment office . . . In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training and experience, and the distance of the available work from his residence."

[2] " 'Suitable Work' means all work which the employe is capable of performing, except work in which—(1) the position offered is vacant, due directly to a strike, lockout, or other labor dispute, or (2) the remuneration, hours or other conditions of the work offered are substantially less favorable to the employe than those prevailing for similar work in the locality, or (3) as a condition of being employed, the employe would be required to join a company union, or to resign from, or refrain from joining, any bona fide labor organization."

erhood of Carpenters and Joiners of America—an affiliate of the American Federation of Labor—for over thirty years, was in appellant's employ in Philadelphia, as a carpenter at the union scale of $1.58 an hour, for five weeks ending January 21, 1944. He was then laid off because of lack of work. He registered for employment, and, subject to two weeks' waiting period, filed claims for unemployment benefits for the weeks ending February 20, 27, March 5 and 12, 1944. He received a compensation check for the first of those weeks; but the Bureau .of Employment and Unemployment Compensation denied his claims for the remaining three weeks, for the reason that he, on February 21, 1944, had refused to accept carpenter work, paying $1.01½ to $1.20 an hour, at Sun Ship Company, a' non-union plant located at Chester, Pennsylvania, to which he had been referred by the United States Employment Service. That company was then engaged in performing ship building contracts made with agencies of the United States government, in the war emergency, and was short of sufficient labor to perform the work. Claimant rested his refusal of employment with Sun Ship Company on the ground that to accept would cause his union to suspend or expel him (as its by-laws provided), and that would result in loss to him of all membership advantages, including sick, old age and death benefits. On appeal, the referee sustained the action of the bureau in refusing compensation; the board reversed and the Superior Court (with BALDRIGE, P. J., and HIRT, J., dissenting) sustained the board and declared claimant entitled to compensation for the weeks in question.

Upon petition of Barclay White Company, claimant's last employer, this Court allowed the present appeal and also permitted General Building Contractors Association, a non-profit corporation of Philadelphia composed of union labor employers engaged in various branches of construction work, to intervene as a party appellant.

It is obvious that the employment offered to claimant was "suitable work", as those words are used in section 402 (a), and defined in section 4 (r) of the statute. Claimant was qualified, by prior experience as a carpenter, to perform the proffered work with Sun Ship Company, without any risk to his health or safety. The evidence showed that the distance between his home and the company's shipyard in Chester is less than that travelled in his former employment with appellant. The position offered him was not vacant because of any strike, lockout or other labor dispute. Claimant did not contend that he refused the referrel because the pay, hours or other working conditions were less favorable to him than those prevailing for similar work in the locality. He was not required by Sun Company to join a company union or resign from, or refrain from joining a labor organization. The language "condition of being employed, the employe would be required . . . to resign from . . . any . . . labor organization", as used in section 4 (r) (3), obviously refers to a condition, in the offer of employment made by the employer, requiring the prospective employe to resign from a labor organization: *Chambers v. Owens-A.-K. Co.* 146 Ohio State 559, 67 N. E. 2d 439; *Bigger v. Unemployment Compensation Commission* (Del.) 46 A. 2d 137. Where, however, the offer of the employer is unconditional, it was not intended that the employe be eligible for compensation where he refuses the proffered position merely because of a condition imposed on him by others. If it had been the intent of the Legislature to cover a situation where the employe would be expelled by his union, it would have used language connoting both expulsion and resignation.

The decisive question in ascertaining whether or not claimant is entitled to unemployment benefits for the three weeks in question is—Did he have "good cause", within the legislative intent, for refusing the "suitable

work" to which he had been referred. The Unemployment Compensation Law contains no definition of "good cause", and, therefore, the duty devolves upon the courts to determine the intent of the Legislature in the use of those words.

A careful study of section 402 (a) has convinced us that "good cause" and "suitable work" are intended to be separate and distinct concepts, and that in determining eligibility for unemployment compensation each must be considered separate and apart from the other. It is well settled, that in construing a statute, effect shall be given, if possible, to all its provisions: See Statutory Construction Act of May 28, 1937, P. L. 1019, section 51. It is impossible to give a general definition of "good cause". The meaning of those words must be determined in each case from the facts of that case. We are convinced that "good cause" was intended to cover reasons which are personal to the employe and extraneous to the employment if they are, as said by the learned Superior Court in *Sturdevant Unemployment Comp. Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898, "real not imaginary, substantial not trifling, reasonable not whimsical, circumstances [which] compel the decision to leave employment" or to refuse suitable work. But in addition, "good cause" must be so interpreted that the fundamental purpose of the legislation shall not be destroyed.

The dominant intent of the statute can best be ascertained from Article I, section 3 thereof, which states: "Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. *Involuntary unemployment* and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to

be used as compensation for loss of wages by employes during periods when they become unemployed *through no fault of their own*. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own*." (Italics added).

Although the statute has been amended many times, the Legislature has not seen fit to alter this section in any way. As to this declaration of public policy, it was aptly said, by KELLER, P. J., in *Dept. L. & I., etc., v. Unemplmnt. Comp. Bd.*, 148 Pa. Superior Ct. 246, 24 A. 2d 667, that (p. 247) : "It is not a mere preamble to the statute, but a constituent part of it and is to be considered in construing or interpreting it", and that (p. 248) : "Subsequent provisions as to eligibility (section 401), or ineligibility (section 402), for compensation must all be read and construed as subject to this basic and fundamental declaration. If it is clear that a person's unemployment is the result of his own fault, he is not eligible for compensation under the Act . . ."

We think it pertinent to say here that we are in no way interfering with the practice and procedure of collective bargaining or with a worker's full freedom of association with his fellows in a labor or other lawful organization. Such considerations have no place here. We are called upon to decide merely whether or not under the facts presented claimant is eligible for compensation under the Unemployment Compensation Law.

It immediately appears from a reading of section 402

(a), with the declaration set forth in Article I, section 3 in mind, that it would be an absurdity to say that it was the intent to give an unemployed person "good cause" to refuse acceptance of "suitable work", and, therefore, to make him eligible for compensation, because of some contract he voluntarily entered into outside of his employment which, in his opinion, may prove more advantageous to him financially. By what stretch of the imagination could it be said that such a person is *involuntarily* unemployed? Claimant entered into membership in his union *of his own volition* because he felt that his best financial interests would be served thereby. His union had adopted by-laws prohibiting its members from working at less than the rate established by it, with non-union members, and on non-union jobs, under penalty of fine, suspension or expulsion. If claimant desires to retain his membership, he is bound by those by-laws, for as between himself and the union such by-laws are not unreasonable; and they are quite efficacious in achieving union unity, so essential to the attainment of its objectives. No one can properly question the fact that a worker who joins a union and abides by its lawful rules, regulations and by-laws is within his legal rights. However, when such union member is unemployed because he refuses to accept a referral (at wages less than those established by the union, although not less than those prevailing for similar work in his community), rather than be fined, suspended or expelled from membership by the union, he is not *involuntarily* unemployed, but rather out of work through his own choosing. There is no compulsion on him to retain his membership in the union, and, therefore, the statute excludes him from its benefits when he refuses to accept "suitable work". The public policy of the Commonwealth does encourage membership in labor organizations but retention of membership therein is not a surrender to circumstances of the kind and quality which will turn voluntary unemployment into involuntary unemployment.

It would do great violence to the clear and unequivocal wording of the statute to hold that a labor or any other organization can control payments of unemployment benefits to its members by merely forbidding them to work at wages less than those set by it, or with certain persons, or at certain places, or under certain conditions. If eligibility under such conditions is to be added to the Act, that must be done by the Legislature, and not the Courts.

We agree with the following statement of HIRT, J., in the dissenting opinion in this case in the Superior Court: "A cause which offends against public policy, so declared, is not a good cause. I am convinced that claimant's excuse for not accepting the referred work, even if he made himself liable thereby to expulsion from his union, is within that class. This is a statute enacted for the common good in an attempt to provide economic security for a time, through referred jobs in productive industry for the unemployed, without the stigma of poor relief, as a substitute for the dole or made-work. Its purpose is to prevent indigence due to involuntary unemployment through no fault of the employee. And while the legislature indicated a sympathetic and proper respect for labor organizations, the purpose of the act was not to further their objectives as such. The act stands impartial between organized labor and industry, in the evolution of their relations one with the other, with a studied policy of non-interference except in definite provisions which insure the right of a workman to maintain his membership in the union of his choice. What the act prohibits is a condition attached to referred employment that a workman join a company union or resign from or refrain from joining any other labor organization. The prohibitions, by implication, relate to conditions imposed by the new employer or by the referring agency. But though not limited to them, . . . it is clear that the exceptions cannot be extended to apply to a workman who may lose his existing membership

under a union by-law merely because of temporary work in a non-union shop while employment in a union shop of his affiliation is not available. To hold otherwise is the equivalent of saying that a union may adopt its own definition of suitable work and determine, by rule and by-law, what does and what does not constitute *good cause* for refusing referred employment. The legislature has not delegated such authority and is without power to do so. Locke's Appeal, 72 Pa. 491."

All the states have passed Unemployment Compensation laws basically similar to that enacted in this Commonwealth. Many decisions have been rendered by administrative boards, but few have reached the Courts. The decisions are indeed conflicting—some holding that, under facts similar to those presented in the instant case, the unemployed worker is eligible to compensation because he has "good cause" to refuse the work; others hold under similar conditions the work is not "suitable". As to those deciding that the unemployed person is not entitled to benefits under the statute, some give as the reason that since the proffered work is "suitable" he is not justified in refusing it; while others hold that if the unemployed union member refuses to accept "suitable work" at an open shop, he excludes himself from the benefits because he has rendered himself unavailable for "suitable" employment.

In *Chambers v. Owens-A.-K. Co.,* supra, where the facts were quite similar to those here present, the Supreme Court of Ohio, said: ". . . the interpretation of appellee [i. e., that he is eligible for compensation] would make the operative effect of a refusal to work depend entirely upon the whim or caprice of an organization to which the applicant for unemployment compensation might belong. It is within the range of possibility that a labor organization might adopt a rule that no member could work where negroes are employed, or where the employment calls for more than four hours as a day's work, or where the place of business of an employer is

more than a mile from the residence of the unemployed member, or where an employer fails to maintain certain facilities relating to the conditions of employment, even though not required by law so to do, or where an employer does not pay a wage equal to the union wage for the same kind of work. Under such an interpretation, the right of the applicant for unemployment compensation would not be fixed or determined by the provisions of the statute but by rules adopted by organizations in which the applicant has membership. Such interpretation of the statute, and as a consequence its administration in conformity to such interpretation, is clearly untenable." See *Bigger v. Unemployment Compensation Commission,* supra.

Claimant having refused "suitable work" without "good cause" is not entitled to unemployment benefits, and the learned Superior Court should have reversed the order of the board and reinstated the decision of the referee.

Judgment reversed, and the order of the referee affirming the bureau's decision disqualifying claimant from receiving credit for claims filed by him for compensable weeks ending February 27, March 5 and 12, 1944, is reinstated.

DISSENTING OPINION BY MR. JUSTICE JONES:

In my opinion, the conclusion reached by Judge RENO for the Superior Court, that the refusal of the referred work by the claimant in this case was for "good cause" as that term is employed in section 402(a) of the Unemployment Compensation Law,[1] is not only sound but accords with what I take to be the overwhelmingly predominant weight of authority in this country (both decisional and editorial) on the question involved. I should affirm the order of the Superior Court and, accordingly, now dissent from this Court's action.

---

[1] Act of December 5, 1936, P. L. (1937) 2897, as amended by the Act of May 21, 1943, P. L. 337.