## Mooney Unemployment Compensation Case.

Mee's Bakery, Inc., Appellant, *v.* Unemployment Compensation Board of Review.

184

Argued October 1, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Emanuel Weiss,* with him *M. B. Rosenberger* and *Shoyer, Rosenberger, Highley & Burns,* for appellant.

*Roland M. Morgan,* Assistant Special Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, and *Charles R. Davis,* Special Deputy Attorney General, for appellee.

OPINION BY FINE, J., January 8, 1948:

This is an appeal by an employer, Mee's Bakery, Inc., from the decision of the Unemployment Compensation Board of Review affirming an award of compensation to Rose Anna Frank Mooney. The bureau denied benefits on the ground that claimant had voluntarily left her employment without good cause; the referee reversed and awarded compensation. The employer appealed to the board which affirmed the referee. This appeal followed.

Appellant challenges the sufficiency of the evidence to support findings that claimant quit her employment for "good cause" and that she was "available" for work. The claimant was employed as a wrapping machine operator by Mee's Bakery, Inc., from January or Feb-

ruary, 1945, until June 29, 1946. She had always been employed on a night shift starting either at 8 or 10 p.m. and worked until 4:30 or 6:30 a.m. Anticipating a termination of the war emergency law permitting women to work after midnight, appellant and the collective bargaining representative of its employees, prior to June 29, 1946, entered into an agreement, the terms of which provided that no female employees should work after 10 p.m. Claimant was duly advised that the shift on which she was customarily employed would be eliminated and was offered work on a shift which began at 11:30 a.m. Claimant refused to accept the offered employment stating that she desired to continue on a night shift as in the past or be assigned to work starting at 9 a.m. Appellant had no shift for women starting at 9 a.m. and was unable to offer work to claimant as requested but repeated its prior offer. Claimant again refused and voluntarily quit her employment on June 29, 1946.

The testimony reveals that claimant is married and the mother of three children whose ages range from 4 to 9 years. Her husband is employed during the day and if claimant accepted work, the children would have been placed in a day nursery. The board found: ". . . because of her domestic obligations the claimant could not accept employment during the hours offered by her employer." She testified that she objected to the later shift because: "I wanted to start at 9 a.m. just for my own convenience." The record warrants the conclusion that the husband took care of the children while the claimant worked at night; that claimant requested a job so that she could start after 9 a.m. until September, when the children went back to school; and that when she was offered a job beginning at 11:30 a.m. she replied that there was no one to care for her children, that she wanted to work so that she could be home in time to get the meals for the family.

Appellant contends that the only "cause" established by the record is claimant's statement that: "I wanted to start at 9 a.m. just for my own convenience"; that this evidences a "mere personal preference" which does not constitute "good cause" within the meaning of Section 402(b) of the Unemployment Compensation Act, Act of December 5, 1936, P. L. 2897, Art. IV, section 402, as last amended by the Act of May 29, 1945, P. L. 1145, section 9, 43 P. S. 802.

"Good cause" as used in section 402(b) need not arise out of or be connected with the claimant's employment: *Sturdevant Unemployment Compensation Case*, 158, Pa. Superior Ct. 548, 45 A. 2d 898; *Teicher Unemployment Compensation Case*, 154 Pa. Superior Ct. 250, 35 A. 2d 739; *Barclay White Company v. Unemployment Compensation Board of Review*, 356 Pa. 43, at page 48, 50 A. 2d 336. In the *Sturdevant Case*, supra, this Court said (p. 555): ". . . the General Assembly deliberately chose to enact into law purely personal reasons as good cause . . ." Regarding the terms "good cause" and "personal reasons", it was said (p. 556): "Of course, 'good cause' and 'personal reasons' are flexible phrases, capable of contraction and expansion, and by construction, all meaning can be compressed out of them or they may be expanded to cover almost any meaning. Reducing them to a fixed, definite and rigid standard, if desirable, is necessarily difficult, if not impossible. However, in whatever context they appear, they connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith . . . if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obliga-

tions, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment."

Measured by these tests, claimant had "good cause" for quitting her employment. She was legally obligated to care for her three small children. Family obligations cannot be considered as mere whim or fancy but, on the contrary, are real and compelling reasons. The board's finding that she desired work at a time to permit her to fulfill her family obligations is supported by the evidence and conclusive. Section 510, Unemployment Compensation Law, supra; Cf. *Hall v. Unemployment Compensation Board of Review*, 160 Pa. Superior Ct. 65, 49 A. 2d 872. Moreover, the convenience to which claimant was referring was not a whim or caprice, but was a real circumstance, a substantial reason and an objective condition existing at her home.

Appellant further contends that ". . . there has been no showing that the claimant has met the other requirement conditioning eligibility for compensation, namely that she was 'available for suitable work' " within the meaning of Section 401(d). The board found that: "The claimant is ready, willing and able to accept employment either on the day shift starting at 9:00 a.m. or on other shifts between the hours of 6:00 p.m. and 6:00 a.m." and concluded that: "Since the claimant is . . . ready, willing and able to accept substantial employment during hours which will not prevent her from meeting her domestic obligations she must be regarded as available for work. . . ." The time claimant was thus available for work was approximately twenty hours each day; claimant lived in Philadelphia where there are many job opportunities and she did not restrict the type of work she was willing to accept during these twenty hours. In view of the fact that she had experience as a waitress there is little doubt there was a labor market for claimant's services. The evidence amply supports

these findings and the board did not err in concluding that claimant was "available for suitable work" within the meaning of section 401(d). Cf. *Sturdevant Unemployment Compensation Case,* supra.

Decision affirmed.