## Sweeney Unemployment Compensation Case.

Argued October 6, 1954. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT and ERVIN, JJ. (HIRT and WOODSIDE, JJ., absent).

*A. W. McMichael,* for claimants, appellants.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellee.

*William H. Wood,* with him *Charles W. Hull, Hull, Leiby & Metzger* and *Chadbourne, Parke, Whiteside, Wolff & Brophy,* for employer, intervening appellee.

OPINION BY RHODES, P. J., January 14, 1955:

The question raised by this appeal in an unemployment compensation case is whether claimant and 144 others, similarly situated, were disqualified to receive unemployment compensation benefits for the weeks involved because of their refusal, without good cause, to accept suitable work. Claimants were found ineli-

gible to receive benefits for the claim weeks following their refusal to accept offered employment.

Section 402 (a) of the Unemployment Compensation Law of 1936, as amended, 43 PS §802 (a), provides: "An employe shall be ineligible for compensation for any week—(a) In which his unemployment is due to failure, without good cause . . ., to accept suitable work when offered to him . . . by any employer: . . ."

There is no substantial dispute about the facts. Carey, Baxter & Kennedy, Inc., had formerly employed about 270 men, including the 145 claimants, in a strip mining operation at the Greenwood Forty Foot and Mammoth Stripping Operation on land of the Lehigh Navigation Coal Company near Tamaqua, Pennsylvania. As of September 30, 1950, Carey, Baxter & Kennedy, Inc., ceased this operation and laid off the 270 men, including claimants. Subsequently, and at least by November 13, 1950, Fauzio Brothers, by contract with Lehigh Navigation Coal Company, agreed to resume the production of coal at the Greenwood stripping operation formerly conducted by Carey, Baxter & Kennedy, Inc. Between November 14, 1950, and December 18, 1950, Fauzio Brothers, by registered mail, offered work to each of the 145 claimants at this stripping operation under working conditions which were substantially identical with those in effect under the previous employment with Carey, Baxter & Kennedy, Inc. Specifically, the offer stated the rates of pay and working conditions would be "similar to rates and conditions on all Fauzio Brothers stripping operations within the jurisdiction of Local 4004, United Mine Workers of America." Fauzio Brothers had five or six other operations. The undisputed evidence showed the principal difference in working conditions was that the Fauzio schedule involved a 7½ hour

shift, whereas under Carey, Baxter & Kennedy, Inc., the shift was 7 hours only. This difference revolved around a lunch period. Under the Carey contract schedule, the workers took no time for lunch but ate it "on the fly," i.e., while working, receiving a pay allowance for an extra quarter hour to cover their lunch period, or for 7¼ hours total pay. Under the Fauzio schedule the workers received the same pay, i.e., for 7¼ hours, but stayed on the job 7½ hours instead of 7 hours, and actually took time out for a quarter hour lunch period.

All of the claimants were members of the United Mine Workers of America, Local No. 4004. On or about November 12, 1950, the members of this union adopted a resolution directing the membership to refuse to work for Fauzio Brothers at the Greenwood stripping operation unless the conditions were the same as under the Carey schedule, i.e., a seven-hour shift with claimants permitted to eat lunch "on the fly." Pursuant to the union resolution, or at least consistent therewith, all of the 145 claimants refused to accept the employment offered by Fauzio Brothers.

The bureau held that claimants were entitled to further benefits on the ground that the employment offered by Fauzio Brothers was not suitable work within the meaning of sections 402 (a) and 4 (t) of the Law, 43 PS §§802 (a), 753, since the conditions of work were less favorable than the working conditions which were in effect at the stripping operation for the previous four years under Carey, Baxter & Kennedy, Inc. Benefits were paid to January 19, 1951. On appeal by Carey, Baxter & Kennedy, Inc., the base year employer, the referee, after hearing, reversed the bureau and disallowed the claims. On appeal by claimants the Board of Review vacated the referee's decision and remanded the case to the referee for fur-

ther testimony. Following additional hearings, the referee reversed the bureau's decision and held claimants ineligible for compensation under section 402 (a) of the Law. On appeal by claimants, the Board made its own findings and affirmed the referee's disallowance of benefits on the ground that claimants refused suitable work without good cause, under section 402 (a).

The Board's decision must be affirmed. Claimants came within the disqualification set up in section 402 (a) providing for ineligibility in any week in which lack of employment is due to a claimant's refusal, without good cause, to accept suitable proffered work.

The employment offered claimants by Fauzio Brothers was clearly within the category of suitable work. In all instances the positions offered claimants were substantially identical as to the type of work each had previously been doing and as to rate of pay each had been receiving. Under the circumstances, the half-hour difference in time spent on the premises did not render the work unsuitable. One who refuses to accept a referral at wages and conditions which are suitable is not "involuntarily unemployed," but rather out of work through his own choosing and not entitled to unemployment compensation. *Barclay White Company v. Unemployment Compensation Board of Review*, 356 Pa. 43, 50 A. 2d 336. The issue of suitability of the offered employment, as defined in section 4 (t) of the Law, raises a question of fact, and where the Board's decision is against the party having the burden of proof the question on appellate review is limited. *Hanna Unemployment Compensation Case*, 172 Pa. Superior Ct. 417, 420, 94 A. 2d 178.

"Good cause" and "suitable work" represent distinct concepts, and in determining eligibility they must be considered separately. *Barclay White Company v.*

*Unemployment Compensation Board of Review,* supra, 356 Pa. 43, 50 A. 2d 336. The reasons for refusal of offered work must be substantial and reasonable, not arbitrary, whimsical, capricious or immaterial. *Suska Unemployment Compensation Case,* 166 Pa. Superior Ct. 293, 70 A. 2d 397.

It is argued on behalf of claimants that the offered work was unsuitable because the jobs tendered were vacant due to a labor dispute. They rely upon section 4 (t) of the Law, 43 PS §753, which, in defining suitable work, provides: "However, . . . no work shall be deemed suitable in which (1) the position offered is vacant, due directly to a strike, lockout, or other labor dispute, . . ." Here there was no employer-employe relationship existing between claimants and Fauzio Brothers. Further, it appeared that the positions offered were vacant due to the closing down of the operation by the prior employer. We have held that a labor dispute may exist under the Law, section 402 (d), 43 PS §802 (d), regardless of whether or not disputants stand in the proximate relation of employer and employe (*Curcio Unemployment Compensation Case,* 165 Pa. Superior Ct. 385, 68 A. 2d 393), but, even under this broad definition, it is clear that the positions offered by Fauzio Brothers were not *vacant due to a labor dispute* within the meaning of section 4 (t) of the Law defining suitable work. Hence, as to these claimants, the offered work was not unsuitable for this reason.

It is further argued that the offers of work were not made in good faith. The good faith of the offers was a factual question which the Board considered and determined in favor of the offeror. The evidence supports the Board's finding in this respect. Certainly this Court cannot say that the offers, which were not tested by claimants, were not made in good faith.

The fact that 53 of the claimants accepted employment with Fauzio Brothers on January 23, 1951, is not conclusive that work was not available to all of the claimants when originally offered. It appeared that other claimants were hired by Fauzio Brothers at dates subsequent to January 23, 1951. Fauzio Brothers began the Greenwood operation on January 23, 1951, and prior to January 20, 1951, when the union rescinded its resolution of November 12, 1950, the claimants refused proffered employment. There was testimony by James Fauzio of the referral employer to the effect that employment would have been available to all the claimants if it had been accepted and the operation thereby started as originally planned. The written offers to the 145 claimants, made in apparent good faith, were prima facie valid. There is no evidence to the contrary. The work offered being suitable work, claimants were bound, in the absence of good cause, to accept it or be subject to disqualification provided by the Law. The contention to the effect that the refusal of employment was justified because the offers were for temporary work is without merit. The letters to the claimants did refer to a temporary job. At the time no permanent contract had been entered into between Fauzio Brothers and the Lehigh Navigation Coal Company. But the action of claimants was not predicated on the possibility the work might have been only temporary. Their refusal was based on a difference as to hours between the Fauzio schedule and that of their former employer. The Board could find from the evidence, and did so find, that the difference as to the work offered and the rates of pay was unsubstantial. Assuming that the work offered to claimants was temporary, they forfeited their right to benefits by refusing to accept it. A claimant who seeks benefits must have been ready,

able, and willing to accept, at all times, suitable employment, temporary or permanent. *Barr Unemployment Compensation Case,* 172 Pa. Superior Ct. 389, 390, 93 A. 2d 877.

Decision is affirmed.