336 A.2d 595

**Larry A. LATTANZIO, Appellant,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Commonwealth of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Nov. 11, 1974.

Decided March 18, 1975.

Eugene F. Zenobi, Alan Linder, J. Richard Gray, Tri-County Legal Services, Lancaster, for appellant.

James R. Adams, Deputy Atty. Gen., Sydney Reuben, Asst. Atty. Gen., Lawrence Silver, Deputy Atty. Gen., Chief, Civ. Litigation Div., Israel Packel, Atty. Gen., Commonwealth of Pennsylvania, Dept. of Justice, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal upon grant of a petition for allocatur, from an order of the Commonwealth Court of Pennsylvania, 10 Commonwealth Court 160, 309 A.2d 459 (1973), which found appellant, Larry A. Lattanzio, ineligible ·for receipt of unemployment compensation benefits under the Unemployment Compensation Act, Act of December 5, 1936, P.L. [1937] 2897, as amended, 43 P.S. § 751 et seq. (1964). There is no serious dispute as to the facts of this case. Mr. Lattanzio was employed by Wells Fargo Alarms Services in Reading, Pennsylvania, as a crew leader installing fire and burglar alarms. On January 2, 1971, the appellant was laid off due to lack of work. He had been employed for this company since February 6, 1969, and it was conceded that during the period of his employment he was an excellent employee

and that the company had no complaints as to the manner in which he discharged his duties. On April 12, 1971, he received notice that he was to return to work at 8:00 A.M. on April 14, 1971. However, on April 13, 1971, he met with the branch manager of the company who informed him that he would be required to obtain a hair cut and to shave his beard and sideburns to conform with "acceptable standards in the community." The appellant expressed his refusal to comply with this directive and was informed that he would not be rehired.

Subsequently, appellant filed an application for unemployment compensation benefits and was notified by the Bureau that his application was denied pursuant to Section 402(a) of the Unemployment Compensation Act, supra, 43 P.S. § 802(a). The Bureau's ruling was predicated upon a finding that appellant had failed to accept an offer of suitable employment *without good cause*. Following a full hearing on June 1, 1971, the referee issued a decision affirming the ruling of the Bureau and, following appellant's appeal to the Unemployment Compensation Board of Review which sustained the action of the referee, appellant sought relief from the Commonwealth Court. By order and opinion dated September 19, 1973, the Commonwealth Court dismissed the appeal and we subsequently granted allocatur. This appeal followed.

 The thrust of appellant's contention is that Section 402(a) as applied to the facts of this case constitutes a violation of his constitutional rights under the First and Fourteenth Amendments of the Federal Constitution. It has, however, been the basic law in this jurisdiction that statutes are presumed constitutional, *Glancey v. Casey*, 447 Pa. 77, 88, 288 A.2d 812 (1972); *Commonwealth v. Daniel*, 430 Pa. 642, 650, 243 A.2d 400 (1968); *Daly v. Hempville*, 411 Pa. 263, 191 A.2d 835 (1963), and we will not reach constitutional issues where the matter can be decided on non-constitutional grounds.

*Binder v. Triangle Publications, Inc.* 442 Pa. 319, 323, 275 A.2d 53 (1971); *Altieri v. Allentown Officers & Employees Retirement Board,* 368 Pa. 176, 180, 81 A.2d 884 (1951); *Hostetter v. Bureau of Traffic Safety,* 10 Cmwlth. 228, 233, 309 A.2d 600 (1973).

Section 402(a) provides:

"An employee shall be ineligible for compensation for any week—

(a) In which his unemployment is due to failure, *without good cause,* either to apply for suitable work at such time and in such manner as a department may prescribe, or to accept suitable work when offered to him by the employment office or by any employer. . . ." (Emphasis added).

Here no question as to the suitability of the proffered employment is raised, since it was an offer to return to his former position at the same rate of pay. The controversy thus necessarily turns on the question as to whether there was "good cause" for the refusal to accept the offer of reemployment under the conditions proposed. While the Act specifically defines the phrase "suitable work" it unfortunately fails to provide a definition of the term "good cause." Additionally, our case law has recognized that "good cause" and "suitable work" represent distinct concepts and must be considered separately. *Barclay White Company v. Unemployment Compensation Board of Review,* 356 Pa. 43, 50 A.2d 336 (1947), cert. denied, 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 347; *Sweeney v. Unemployment Compensation Board of Review,* 177 Pa.Super. 243, 110 A.2d 843 (1955); *Dower v. Unemployment Compensation Board of Review,* 179 Pa.Super. 201, 115 A.2d 878 (1955). Therefore the statutory definition of "suitable work" is of little help in ascertaining the legislative intent in its use of the term "good cause."

In attempting to arrive at a definition for this term, it is helpful to be mindful of the guiding principle an-

nounced by this Court in *Wedner v. Unemployment Compensation Board of Review*, 449 Pa. 460, 467, 296 A.2d 792, 796 (1972):

" 'Finally, it is to be remembered that the Unemployment Compensation Law is a remedial statute, and, excepting the sections imposing taxes, its provisions mut be liberally and broadly construed so that its objectives [insuring that employees who become unemployed through no fault of their own are provided with some semblance of economic security] may be completely achieved.' *Blum Unemployment Compensation Case*, 163 Pa.Super. 271, 278, 60 A.2d 568, 571 (1948)."

The appellate decisions in this jurisdiction have offered various definitions for this term. "Good cause" has been defined as "[s]ome necessitous and compelling reason", *Wolovich Unemployment Compensation Case*, 169 Pa.Super. 356, 359, 82 A.2d 64, 65 (1951); *Suska Unemployment Compensation Case*, 166 Pa.Super. 293, 296, 70 A.2d 397, 399 (1950). On occasion "good cause" has been treated as synonymous with "good faith" and characterized as "not only the merely negative virtue of freedom from fraud but requires positive conduct which is consistent with a genuine desire to work and be self-supporting". *Maribello Unemployment Compensation Case*, 200 Pa.Super. 330, 332, 188 A.2d 861, 862 (1963); *Nygren Employment Compensation Case*, 184 Pa.Super. 138, 132 A.2d 727 (1957). The Commonwealth Court most recently in the case of *Trella v. Unemployment Compensation Board of Review*, 10 Cmwlth. 305, 307, 309 A. 2d 742, 743 (1973), construed the term to require a "substantial and reasonable ground" for refusing the proffered employment. See also *Reed Unemployment Compensation Case*, 182 Pa.Super. 428, 430, 128 A.2d 112 (1956).

Probably the most informative formulation of this concept is provided by the Superior Court in *Bentz Unem-*

*ployment Compensation Case,* 190 Pa.Super. 582, 155 A. 2d 461 (1959). There the Court stated:

> "The reasons for refusal of offered work must be substantial and reasonable, not arbitrary, whimsical, capricious or immaterial. *Sweeney Unemployment Compensation Case,* supra, 177 Pa.Super. 243, 248, 110 A. 2d 843. Good cause for refusing a referral rests on good faith, and good faith, as used in this context, includes positive conduct on the part of the claimant which is consistent with a genuine desire to work and to be self-supporting. *Brilhart Unemployment Compensation Case,* 159 Pa.Super. 567, 569, 49 A.2d 260."

█ Applying the *Bentz* standard to the present facts, we are satisfied that there was "good cause" for the instant claimant to reject the proffered employment under the conditions imposed. From a review of the factual situation by the courts in this area, it is apparent that this term has been employed to justify the refusal of benefits where it appears in the record either that the claimant is malingering or has unreasonably rejected the opportunity of employment. Illustrative of this situation is the Court's opinion in *Misinkaitis Unemployment Compensation Case,* 169 Pa.Super. 124, 82 A.2d 74 (1951). In that decision the Court observed:

> " 'We have recognized that, where an employee is referred to a position which pays a wage materially lower than the wage last earned, the employee may be justified in refusing such a referral while seeking employment at a rate of pay more commensurate with his previously demonstrated earning capacity. The right to decline work for this reason is not, however, without qualification; the employee is entitled only to a reasonable opportunity to obtain work at a satisfactory wage rate.' *Haug Unemployment Compensation Case,* 162 Pa.Superior Ct. 1, 4, 56 A.2d 396, 397. The reason for permitting a claimant to refuse proffered work paying wages materially lower than his former

employment is to afford him a reasonable opportunity to seek employment at a rate of pay more commensurate with his demonstrated earning capacity. *To grant such opportunity to a claimant such as the present one who is admittedly merely marking time for several weeks until recalled to his former employment is to extend 'an invitation to a compensated rest'* ". (Emphasis added) Id. at 128, 82 A.2d at 76.[1]

The instant appellant has at all times been willing to accept the employment offered and there is nothing on the record to suggest any reluctance on his part to properly perform the required duties. The controversy here centers around the personal right of an individual to determine his personal appearance. Crucial to this determination is the fact that although the request was made to secure conformity with allegedly acceptable community standards, there is no evidence that the requested alteration in appellant's appearance was in any way essential to the proper performance of the duties to which he would have been assigned. The only justification given by appellee was the vague assertion that appellant's "modish" appearance might reflect unfavorably upon his employer.

Additionally, there is no allegation that appellant was untidy, slovenly, unkempt, unclean or in any way offensive to reasonably acceptable health standards. The gist of the objection under consideration was that he chose a style of appearance which has been in recent years accepted by many segments of our society. This case, therefore, presents the narrow issue as to whether an employer's expression of a preference of one accepted mode of dress or appearance over another equally accept-

---

1. Comparable factual situations can be found in *Trella v. Unemployment Compensation Board of Review, supra; Kanouse v. Unemployment Compensation Board of Review,* 9 Cmwlth. 188, 305 A.2d 782 (1973); *Maribello Unemployment Compensation Case, supra; Reed Unemployment Compensation Case, supra; Wolovich Unemployment Compensation Case, supra.*

ed style, where no relationship is established between the preference and performance of the duties involved, should justify the denial of benefits for failure to comply.

█ Under the present state of our law we have permitted private employers wide latitude in expressing their personal bias and sensitivities in their hiring practices.[2] However, this allowance of latitude to an employer in the selection of his employee does not justify a restrictive interpretation of a legislative remedial enactment designed specifically to help those who are unemployed.

We are constrained to conclude that under the facts of this case, appellant's refusal was with "good cause" and, therefore, benefits under the Unemployment Compensation Act were improperly denied. Therefore, the order of the Commonwealth Court affirming the action of the Unemployment Board of Review is reversed and the matter remanded for further proceedings consistent herewith.

POMEROY, J., filed a dissenting opinion in which Mr. Chief Justice JONES joins.

POMEROY, Justice (dissenting).

Section 402 of the Unemployment Compensation Act provides in part that "[a]n employee shall be ineligible for compensation for any week . . . in which his unemployment is due to failure, without good cause . . . to accept suitable work when offered to him by the employment office of or by any employer . . .".[1]

---

2. This right however is not unlimited. See the Act of October 27, 1955, P.L. 744, § 5; 1956, March 28, P.L. (1955), 1354, § 1; 1961, February 28, P.L. 47, § 2, as amended 1966, January 24, P.L. (1965), 1525, § 2; 1967, November 27, P.L. 622, § 3; 1969, July 9, P.L. 133, § 2, 43 P.S. § 955 (Supp.1974-75).

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, art. IV, § 402, as amended, 43 P.S. § 802.

The Court today decides that appellant was improperly denied unemployment compensation benefits because "there was 'good cause' for [him] to reject the proffered employment under the conditions imposed". *Opinion of the Court*, ante at 598. I respectfully dissent.

Preliminarily, I must note that the Court has considered and decided an issue which appellant has not raised. In his appeal to the Commonwealth Court, in his petition for allowance of appeal to this Court, and in his appeal to this Court, appellant has presented but one question: whether the denial of unemployment compensation benefits violated his right to freedom of speech guaranteed by the First Amendment to the United States Constitution. The Commonwealth Court answered that question in the negative. At no time during the appellate process has appellant challenged the referee's finding that he refused suitable work without good cause. Although the Court is undoubtedly correct in stating that we should not reach constitutional questions when a case can be decided on other grounds, *Opinion of the Court*, ante at 597, that is not to say that an appellate court may search for such grounds beyond the issues presented to it in order to avoid the constitutional question. Regard for proper appellate practice indicates that it should not.[2]

**2.** The decision of this appeal on a ground which was raised in neither this Court nor the Commonwealth Court is difficult to square with this Court's recent pronouncements in declining to consider questions not properly raised and preserved in the courts below. It is of course well-settled that, as a general rule, "issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court." *Commonwealth v. Agie*, 449 Pa. 187, 189, 296 A.2d 741 (1973). Recently the Court discarded what had been the most notable exception to this general rule, the doctrine of basic and fundamental error. See *Commonwealth v. Clair*, —— Pa. ——, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). In *Commonwealth v. Piper*, 458 Pa. 307, 309 n. 5, 328 A. 2d 845, 847 n. 5 (1974), the Court, addressing itself to the question of abandonment of issues which were raised below but not on appeal, said, "Failure to pursue an issue on appeal is just as effective a forfeiture as the failure to initially raise the issue". While I have not always agreed with the extent to which this

Since, however, the Court has decided that appellant had "good cause" to refuse re-employment with Wells Fargo Alarm Services, Inc., I deem it appropriate to express my disagreement with the Court's resolution of the issue.

The Unemployment Compensation Law does not define "good cause", and this Court has said that its meaning "must be determined in each case from the facts of that case". *Barclay White Co. v. Unemployment Compensation Board*, 356 Pa. 43, 48, 50 A.2d 336, 340 (1947). In each case it is important that "good cause" be "so interpreted that the fundamental purpose of the legislation shall not be destroyed". *Id.* The "fundamental purpose" of the Unemployment Compensation Law is stated in its "declaration of public policy" as follows:

"Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. *Involuntary unemployment* and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can

Court has been willing to find the "waiver" of issue for appellate review (see my dissenting opinions in *Piper, supra* at 310, 328 A. 2d at 848 and in *Clair, supra* at ——, 326 A.2d at 274, and my concurring and dissenting opinion in *Dilliplaine, supra* at 310, 328 A.2d at 848), I can conceive of no good reason for the Court's consideration of a question which appellant has never on appeal sought to have answered.

The rule that an appellate court will not consider *as grounds for reversal* issues not raised and properly preserved below by the appellant is to be distinguished from the rule, founded on considerations of judicial economy, that a decision will be *affirmed* if it was correct for any reason, even though the reason given by the court below may have been erroneous. *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955). For recent applications of the latter rule see *Mazer v. Williams Bros. Co.*, 461 Pa. 587, 594 n. 6, 337 A.2d 559, 562 n. 6 (1975); *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 604 n. 5, 327 A.2d 94, 96 n. 5 (1974); *Prynn Estate*, 455 Pa. 192, 197 n. 9, 315 A.2d 265, 267 n. 9 (1973).

best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become *unemployed through no fault of their own.* The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own.*" (Emphasis added.)[3]

Implicit in the use of the phrases "no fault of their own" and "involuntary" unemployment are standards of good faith,[4] *and* reasonableness.[5] Thus, only those unemployed individuals who act in good faith and who make reasonable efforts to become employed are entitled to benefits under the Act. As this Court said in *Barclay White Co. v. Unemployment Compensation Board, supra* at 48, 50 A.2d at 340:

"We are convinced that 'good cause' was intended to cover reasons which are personal to the employe and extraneous to the employment if they are, as said by

3. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, art. I, § 3, 43 P.S. § 752.

4. See *Lybarger Unemployment Compensation Case,* 418 Pa. 471, 211 A.2d 463 (1965); *Bentz Unemployment Compensation Case,* 190 Pa.Super. 582, 155 A.2d 461 (1959).

5. In *Dawkins Unemployment Compensation Case,* 358 Pa. 224, 56 A.2d 254 (1948), this Court defined good cause as "such a cause as would reasonably motivate in a similar situation the average able bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the 'compensated unemployed' ". 358 Pa. at 237, 56 A.2d at 261.

the learned Superior Court in *Sturdevant Unemployment Comp. Case,* 158 Pa.Super. 548, 45 A.2d 898, 903, 'real not imaginary, substantial not trifling, reasonable not whimsical circumstances [which] compel the decision to leave employment' or to refuse suitable work."

In cases involving the question whether an employee had "good cause" to refuse work, the claimant bears the burden of proving that he acted reasonably and in good faith and that his reasons for refusing employment were substantial. *Sledzianowski Unemployment Compensation Case,* 168 Pa.Super. 37, 76 A.2d 666 (1950); see *Rabinowitz v. Unemployment Compensation Board of Review,* —— Pa.Cmwlth. ——, 324 A.2d 825 (1974); *Kernisky v. Unemployment Compensation Board of Review,* 10 Pa.Cmwlth. 199, 309 A.2d 181 (1973). On appeal the evidence must be viewed in a light most favorable to the party who has prevailed below. See *Rabinowitz v. Unemployment Compensation Board of Review, supra; Hinkle v. Unemployment Compensation Board of Review,* 9 Pa.Cmwlth. 512, 308 A.2d 173 (1973). So viewed, it seems manifest to me that the referee's finding that "good cause" had not been made out must be upheld.

The majority asserts that Wells Fargo established "no relationship . . . between the preference [for a particular mode of appearance] and performance of the duties involved". Opinion of the Court, ante at 599. It thus seems to suggest that the condition attached to the employer's job offer was unreasonable, and hence that rejection of it was for good cause. I do not agree. Appellant's job was that of "crew leader". In that capacity he supervised for his employer the installation of fire and burglar alarms at locations throughout the community. He was responsible for dealing directly with customers of his employer, and he was regularly seen in public wearing a uniform bearing the name of his employer. In light of these circumstances, it was not unreasonable for Wells Fargo to be concerned with appel-

lant's appearance and to require that it be such as would not reflect unfavorably upon the company in the minds of large numbers of citizens. As the United States Court of Appeals for the District of Columbia Circuit has recently put it:

> " 'Perhaps no facet of business life is more important than a company's place in public estimation. That the image created by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance. Good grooming regulations reflect a company's policy in our highly competitive business environment. Reasonable requirements in furtherance of that policy are an aspect of managerial responsibility.' *Fagan v. National Cash Register Co.,* 157 U.S. App.D.C. 15, 481 F.2d 1115, 1124–25 (1973)." [6]

The question then becomes not, as the majority puts it, "the personal right of an individual to determine his personal appearance", ante at 599 (a right which is disputed by no one), but whether a job applicant's unwillingness to make adjustments in his appearance in order to comply with the employer's reasonable requirement constitutes "good cause" within the meaning of § 402 of the Act. As indicated above, I am satisfied that appellant here has failed to meet his burden that it does. Wells Fargo had maintained its grooming policy for some time, appellant had been aware of it, and had complied with it during his prior employment with the company from February 6, 1969, until January 2, 1971. When asked at the hearing why he would not comply with it when called back to work on April 12, 1971, his only response was a vague assertion that "its discriminatory". Such a non-

---

6. See also *Southern Pacific Transport Co. v. Doyal,* 289 So.2d 882 (La.App.1974); *Gladstone v. Catherwood,* 36 A.D.2d 204, 319 N. Y.S. 664, 666 (1971), aff'd, 30 N.Y.2d 576, 330 N.Y.S.2d 793, 281 N.E.2d 842 (1972).

specific charge, totally unsupported, does not qualify under any of our prior cases as good cause to reject a job offer. While a legitimate indulgence of personal preference in hair grooming, such refusal should not carry with it a right to unemployment compensation benefits at public expense.

Turning but briefly to the sole question which appellant has asked us to decide and which I think cannot be avoided—whether or not his First Amendment rights have been violated—this record may be searched in vain for any indication that appellant intended to convey any "particularized message" by means of his beard, his mustache, or the length of his hair. See *Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842, 847 (1974). I therefore agree with the Commonwealth Court that the denial to appellant of unemployment compensation benefits in no way penalized his exercise of any constitutionally protected form of expression. See the opinion of the Commonwealth Court, *Lattanzio v. Unemployment Compensation Board of Review*, 10 Pa. Cmwlth. 160, 309 A.2d 459 (1973); compare *Spence v. Washington, supra,* and *Tinker v. Des Moines School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

For the reasons stated, I would affirm the order of the Commonwealth Court.

JONES, C. J., joins in this dissent.