Sarah H. Trexler, Appellant *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Argued April 9, 1976, before Judges KRAMER, WIL-
KINSON, JR. and BLATT, sitting as a panel of three.

*Louis M. Shucker,* with him *James Breslauer,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, November 19, 1976:

This is an appeal by Sarah H. Trexler (claimant) from a decision of the Unemployment Compensation Board of Review (Board), dated August 22, 1975, which affirmed a referee's order denying her claim for unemployment compensation benefits.

The material facts of this case are not in dispute. The claimant was last employed by J. B. Liebman, Reading, Pennsylvania, as an accounting clerk at the hourly rate of $2.65. On September 20, 1974, she was discharged from that company's employ and she received unemployment compensation benefits for two months thereafter, during which time she was available for suitable work, but only between the hours of 8:00 A.M. and 5:00 P.M., her availability being limited because of her inability to find a reliable person to care for her 12-month-old child except during the period indicated. She actively sought employment within these time limits by registering with a local employment agency as well as with the Bureau of Employment Security (Bureau).

On or about November 25, 1974, the Bureau referred the claimant to Gilbert Associates (Gilbert) for the position of accounting clerk at $350-$550 per month. On November 27, she reported for an inter-

view with Gilbert and indicated her interest in the job. She was informed, however, that she would occasionally be required to work overtime, *i.e,* after 5:00 P.M. On or about December 5, after unsuccessfully attempting to make suitable child-care arrangements for the extra hours which might be required, she informed Gilbert that she could not take the job. The Board held that, although the claimant's limited availability did not disqualify her for benefits under Section 401(d) of the Unemployment Compensation Law[1] (Act), 43 P.S. §801(d), she had refused *without good cause* to accept suitable employment and, therefore, was ineligible for continued benefits, payment of such being prohibited under Section 402(a) of the Act,[2] 43 P.S. §802(a). The claimant then appealed to this Court.

The scope of our review in unemployment compensation cases is, of course, limited to questions of law and absent fraud to a determination as to whether or not the Board's findings are supported by the evidence. *Myers v. Unemployment Compensation Board of Review,* 17 Pa. Commonwealth Ct. 281, 330 A.2d 886 (1975). We are called upon here to determine, therefore, whether or not as a matter of law the claimant was offered "suitable work" and, if she was, whether

---

[1] Section 401(d) of the Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §801(d) provides, *inter alia,* as follows:

"Compensation shall be payable to any employe who is or becomes unemployed, and who—

. . . .

"(d) Is able to work and available for suitable work. . . ."

[2] Section 402(a) of the Act, 43 P.S. §802(a), provides, *inter alia,* as follows:

"An employe shall be ineligible for compensation for any week—

"(a) In which his unemployment is due to failure, without good cause . . . to accept suitable work when offered to him by the employment office or by any employer. . . ."

or not her parental duty to care for her child was "good cause" for refusing that work.

The claimant contends that she was not offered "suitable" employment because she would be required to work, on occasion, beyond the hourly limits of her availability. The section of the Act to which we must look to determine whether the work is "suitable," however, does not address the subject of suitability in terms of the coincidence of the hours offered and the hours of availability, but states only that "no work shall be deemed suitable in which . . . (2) the remuneration, *hours* or other conditions of the work offered are substantially less favorable to the employe than those prevailing for similar work in the locality. . . ." Section 4(t) of the Act, 43 P.S. §753(t) (emphasis added). Here, although the occasional overtime may have been unusual for the position of accounting clerk, there is nothing in the record to indicate that the hours were *substantially* less favorable to the claimant than those prevailing for similar work in the area and we must conclude, therefore, that she was offered "suitable work."

The remaining issue with which we are faced is whether or not the claimant had "good cause" to refuse the proffered employment, and "good cause" is not explicitly defined in the Act. In making this determination, therefore, we must bear in mind that "[p]resumably, an unemployed worker in a covered employment is entitled to benefits, and loses them only when he falls under the condemnation of a disqualifying provision of the act, *fairly, liberally and broadly interpreted*." *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 560, 45 A.2d 898, 904 (1946), (emphasis added); *accord, Savage Unemployment Compensation Case,* 401 Pa. 501, 165 A.2d 374 (1960). We must also remember that "good cause," being undefined in the Act, is a flexible term

and therefore not amenable to general rules or rigid formulas. *See Mooney Unemployment Compensation Case,* 162 Pa. Superior Ct. 183, 56 A.2d 386 (1948). Instead, its meaning must be deduced from the facts of each case in a manner that is consistent with the Act's fundamental purpose, which is to insure that employes who become unemployed through no fault of their own are provided with some semblance of economic security. *Lattanzio v. Unemployment Compensation Board of Review,* 461 Pa. 392, 336 A.2d 595 (1975); *Wedner Unemployment Compensation Case,* 449 Pa. 460, 296 A.2d 792 (1972). Viewed in this setting "good cause" may cover reasons which are extraneous to the employment and strictly personal to the claimant, provided, however, that such personal reasons involve real and substantial circumstances which compel the decision to refuse suitable work and rest on "good faith." *Lattanzio, supra; Quiggle Unemployment Compensation Case,* 172 Pa. Superior Ct. 430, 94 A.2d 367 (1953), (hereinafter referred to as *Quiggle*). "[G]ood faith, as used in this context, includes positive conduct on the part of the claimant which is consistent with a genuine desire to work and be self-supporting." *Lattanzio, supra,* at 398, 336 A.2d at 598 quoting *Bentz Unemployment Compensation Case,* 190 Pa. Superior Ct. 582, 155 A.2d 461 (1959) (citations omitted).

In *Quiggle, supra,* decided in 1953, the Superior Court, having found that the claimant's conduct there evidenced a genuine desire to work, held that her necessity to care for her small child during the hours of proffered employment furnished her with "good cause" to refuse the job and she, therefore, would remain eligible for unemployment compensation benefits. In 1961, however, the Superior Court, relying solely on *Watson Unemployment Compensation Case,* 176 Pa. Superior Ct. 490, 109 A.2d 215 (1954), held

that under no circumstances could such parental responsibility provide a claimant with "good cause" to refuse suitable employment. *Buchko Unemployment Compensation Case,* 196 Pa. Superior Ct. 559, 175 A.2d 914 (1961) (hereinafter referred to as *Buchko*). Thus, under our decisional law, there would seem to exist at this time two apparently opposing rules as to the determination of the continued eligibility of a claimant who has refused suitable work because of parental obligations. In an attempt to resolve this apparent conflict, we must endeavor to determine whether or not the legislature intended that domestic responsibilities be categorically excluded from consideration as "good cause," and, to make this determination, we must examine the statutory history of the term "good cause" as it has been used with respect to the Act.

On January 20, 1953, the date the *Quiggle* decision was filed, therefore, it must be noted that "good cause" was used to determine a claimant's eligibility under two separate sections of the Act, which involved two distinct situations: (1) in Section 402(a) which concerns the claimant who has refused to accept suitable work; and (2) in Section 402(b), which deals with the claimant who has voluntarily left his job and is seeking to obtain benefits initially. Prior to 1953, judicial interpretations of "good cause" had been in agreement that domestic responsibilities could furnish the claimant with good cause in cases where the claimant had voluntarily left his job (Section 402(a) cases). *See, e.g., Mooney Unemployment Compensation Case, supra,* wherein it was held that, where a change in hours worked made it impossible for the claimant to care for her three small children, she had "good cause" to leave her job.

Then, on August 24, 1953, the legislature adopted an amendment[3] which excluded from consideration as "good cause" in voluntary termination cases "marital, filial and domestic circumstances and obligations" (Section 402(b) cases). Thereafter, in *Watson Unemployment Compensation Case, supra,* decided in 1954, the Superior Court was called upon to determine whether or not the "marital, filial and domestic" exceptions to "good cause" in "voluntary termination" cases (under Section 402(b)) applied as well to "refusal of suitable work" cases (under Section 402(a)). That court, applying the rule of statutory construction that a word or phrase the meaning of which is clear when used in one place in a statute will be construed to mean the same when used elsewhere in the statute, held that because "marital, filial and domestic circumstances and obligations" could not be "good cause" when a claimant quit his job, such circumstances could not be "good cause" when he refused a job.

In 1955, however, the legislature undermined the basis for the court's decision in *Watson* when it removed the "marital, filial and domestic" exception under Section 402(b) and rephrased the test for determining the eligibility of a claimant who had voluntarily left his job so that he would be eligible for benefits only if he terminated his employment for a *"cause of a necessitous and compelling nature."*[4] The test for determining eligibility where a claimant had refused suitable work, governed by Section 402(a), however, remained merely "good cause."

These amendatory actions indicate to us that the legislative intention was that separate tests be used to determine eligibility in "refusal" cases (under Sec-

---

3 Section 4 of the Act of August 24, 1953, P.L. 1397.

4 Section 5 of the Act of March 30, 1955, P.L. 6.

tion 402(a)) and in "voluntary termination" cases (under Section 402(b)) and that a more restrictive standard was to be applied in the latter. And, although it is true that the Act now excludes domestic responsibilities as a possible cause of a "necessitous and compelling nature" for quitting a job (under Section 402(b)), it does not follow that such duties cannot furnish an individual with "good cause" for refusing work (under Section 402(a)). We believe, therefore, that "[w]hen the Legislature in 1955 removed the specific exception of the 1953 amendment precluding marital, filial and domestic circumstances and obligations from being good cause within the meaning of the Act, the Legislature intended those obligations again to be good cause, as had been held prior to the 1953 exception." *Savage, supra,* 401 Pa. at 507, 165 A.2d at 377.

The rule enunciated in *Quiggle, supra,* (that a mother's necessity to care for her child can be "good cause" to refuse suitable employment under Section 402(a)) is, we believe, the interpretation which the legislature intended should prevail. As we have noted *Buchko, supra,* (which had held that such parental responsibility could not furnish a claimant with good cause to refuse a job), relied solely on *Watson Unemployment Compensation Case, supra,* the basis of which has since been removed by legislative amendments to the statute concerned. We believe it necessary, therefore, to overrule *Buchko.* In addition, we must note that at the time of our consideration of this issue in *Unemployment Compensation Board of Review v. Book,* 24 Pa. Commonwealth Ct. 36, 354 A.2d 4 (1976), neither the briefs of counsel nor our independent research disclosed the statutory history of "good cause" which has convinced us that *Buchko* was improperly decided. Therefore, having relied on *Buchko* in reaching our decision there, we now believe that *Book* must be overruled as well.

Returning to the present case, we believe that the claimant's conduct evidenced the requisite "good faith" in her effort to secure new employment and that her parental duty was a substantial and reasonable basis for refusing the position offered by Gilbert. We conclude, therefore, that she refused suitable work for "good cause," and is entitled to unemployment compensation benefits.

In view of the above, the order of the Unemployment Compensation Board of Review insofar as it denies the claim of Sarah H. Trexler pursuant to Section 402(a) of the Unemployment Compensation Law is hereby reversed and the case remanded to the Board for a proper computation of benefits.

## ORDER

AND Now, this 19th day of November, 1976, the order of the Unemployment Compensation Board of Review insofar as it denies the claim of Sarah H. Trexler pursuant to Section 402(a) of the Unemployment Compensation Law is hereby reversed and the case is hereby remanded to the Board for a proper computation of benefits.

---

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent on the same grounds, logic, and the law noted in an opinion of this Court in *Unemployment Compensation Board of Review v. Book*, 24 Pa. Commonwealth Ct. 36, 354 A.2d 4 (1976). No matter how sympathetic one may be for the mother of a child in need of babysitting assistance, certainly consultation with one or two babysitters should not be used as justification for unemployment benefits upon the employee's rejection of employment because of the possibility of overtime. I believe the Legislature never intended such a result.