Melvin A. MARSHALL, Petitioner,

v.

DISTRICT UNEMPLOYMENT COM-
PENSATION BOARD, Respondent.

No. 9676.

District of Columbia Court of Appeals.

Submitted Oct. 23, 1975.

Decided Aug. 29, 1977.

Rehearing and Rehearing en Banc
Denied Nov. 8, 1977.

Melvin A. Marshall, pro se.

Robert J. Hallock, George A. Ross, Bill L. Smith and John L. Davis, Washington, D. C., were on the brief for respondent.

Before KELLY and NEBEKER, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

Petitioner was discharged from his employment as a probationary police officer for refusing to trim his hair and shave his beard in conformity with the regulations [1] of the Metropolitan Police Department after being told to comply with such provisions by a supervisory official. This case is before us on his petition for review of a

---

1. Such regulations are contained in Metropolitan Police Department General Order 1102.3, issued Dec. 8, 1974, and, insofar as pertinent, provide:

Part I F. 2. *Hair*: Hair shall be neat, clean, and trimmed to present a groomed appearance. It shall not be of such length that it prevents the uniform hat from fitting securely on the head. Hair on the sides of the head may touch the top of the ears, but shall not cover any portion of the outside surface of the ear. Hair on the back of the head may touch, but shall not extend over the shirt collar. The hair shall be groomed so that when the member is covered the hair does not fall below the eyebrows or bunch out to the front, side, rear of the band of the headgear. Plaited or braided hair shall not be permitted. . . .

\* \* \* \* \* \*

(4) . . . beards and goatees are prohibited.

District Unemployment Compensation Board decision disqualifying him from unemployment benefits for seven weeks.[2] Petitioner contends that because he took a private religious vow not to cut his hair or whiskers, his dismissal from the police force was an illegal infringement upon both his First Amendment right to religious freedom and rights accorded him by the District Human Rights Law, Regulations 73–22, 20 D.C. Reg. No. 10 at 345, 351, November 19, 1973.

▮ The function of the Board is not to pass judgment upon the standards of behavior prescribed by an employer for retention in employment but rather to ascertain whether the reason assigned for an employee's discharge is borne out by the facts, and then to determine whether such reason amounts to "misconduct" within the meaning of D.C. Code 1973, § 46–310(b). Therefore, our review is solely to determine whether the Board's findings of fact are supported in the record by substantial evidence and whether the law was correctly applied.[3] Here the relevant facts are not in dispute and are reflected in the intermediate report of the appeals examiner as adopted and affirmed by the Board on appeal.

The appeals examiner found that petitioner, a Roman Catholic, had several years ago taken a private vow not to cut his hair or beard; that on September 30, 1974, he was hired as a probationary police officer and assigned to undercover narcotics work; that on December 9, 1974, he was reassigned to the police academy to begin his formal training; that at the academy he was ordered by a superior officer to trim his hair and shave his beard; that petitioner refused to do so and was then advised by the director of training, who repeated the same order, that petitioner's continued refusal to comply would result in discharge; and that on petitioner's persistent refusal to obey, he was suspended and ultimately discharged on January 23, 1975.

The examiner also found that upon becoming a police officer, petitioner "could reasonably expect his religious obligations as to his hair and beard style to create a conflict with the possible Police Department standards in these areas" and should have inquired before he had obligated himself to obey the lawful directive of his superiors. He concluded as a matter of law that the Department had a legal right to promulgate reasonable rules to regulate the clothing and grooming of patrolmen, and hence petitioner's refusal to obey the orders to comply with such rules was insubordination amounting to misconduct.

An examination of the transcript of hearing shows substantial evidence to support all of the examiner's findings of fact with the possible exception of the finding relating to petitioner's reasonable expectations of a likelihood of conflict between his hirsute appearance and possible departmental standards. The record discloses that the General Order requiring uniformed officers to be clean-shaven and to keep their hair at a certain length was not promulgated until some two months after petitioner was hired, but does not reveal his state of mind at the time he joined the force.

▮ We regard this finding as immaterial, however, for we know of no legal doctrine that confers upon employees a vested right to an indefinite continuance of the same rules and working conditions which prevailed at the date of entry into employment, unless, of course, the changes were such that compliance with them was beyond the physical or educational qualifications of certain employees.[4] In this particular case,

---

**2.** D.C. Code 1973, § 46–310(b) provides that an employee who is discharged for misconduct shall be denied benefits for a period of from four to nine weeks. Petitioner was denied benefits for seven weeks, which amounted to a reduction in his potential benefits of $700.00.

**3.** D.C. Code 1973, § 46–312 (Supp. II, 1975), provides that review of DUCB decisions shall be in accordance with the Administrative Procedure Act. D.C. Code 1973, § 1–1501 *et seq.*

**4.** Presumably persons forced out of their jobs because of inability to meet such standards would not be disqualified for unemployment compensation, as the termination of their employment was not due to any fault of their own. Cf. *Doherty v. District of Columbia Unemp.*

if the challenged change of rules was reasonably calculated to promote the efficiency of the police department and the safety of the public, it would be absurd to apply the new rule only to officers recruited after its effective date. Unlike a rule raising the minimum height for officers or making an academic degree a condition for retention in service, a rule prescribing standards of hair length can be conformed with readily.

■ Assuming, without deciding, that the challenged general order was valid, it is our opinion that a deliberate refusal to comply with it justified the Board in adopting the conclusion that petitioner was insubordinate and that such behavior amounted to "misconduct" within the meaning of D.C. Code 1973, § 46–310(b). In *Hickenbottom v. District of Columbia Unemployment Compensation Board*, D.C.App., 273 A.2d 475, 477–78 (1971), we quoted with approval the following definition of that term:

[Misconduct] "must be an act of wanton or wilful disregard of the employer's interest, *a deliberate violation of the employer's rules,* a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." 48 Am.Jur. Social Security, Unemployment Insurance, Etc., § 38 (1943) (footnotes omitted). [Emphasis supplied.]

As these criteria are worded in the disjunctive, it is apparent that any discharge based upon a deliberate violation of rules amounts to "misconduct" under subsection (b) of § 46–310. It is unnecessary to prove that the employee's motives could be characterized as "wanton", a manifestation of "culpability" or "evil design." [5]

There remains the question of whether the regulation which petitioner failed to honor was invalid because of its asserted infringement upon petitioner's rights under the "free exercise" clause of the First Amendment and the D.C. Human Rights Law. We have some doubt as to whether a denial of unemployment compensation confers jurisdiction upon any court to entertain a collateral attack upon some other statute or regulation on the ground that its enforcement by his employer contravenes some right conferred upon the claimant by the Constitution. It is well established that the right of a person to quit his job individually is protected by the "involuntary servitude" clause of the Thirteenth Amendment.[6] But it is equally well settled that the exercise of this constitutionally guaranteed option by an employee can cost him his right to unemployment benefits.[7]

In *Lattanzio v. Unemployment Compensation Board of Review,* 461 Pa. 392, 336 A.2d 595 (1975), relied upon by petitioner, the Pennsylvania Supreme Court did entertain an appeal based on a constitutional attack upon an agency denial of benefits where the claimant refused his employer's

Comp. Bd., D.C.App., 283 A.2d 206 (1971), *cert. denied,* 406 U.S. 932, 92 S.Ct. 1764, 32 L.Ed.2d 135 (1972).

**5.** We do not regard petitioner's willingness to accept assignments to a harbor police job or a plainclothes squad—assignments which he avers are not covered by the hair-grooming regulations—as justifying his refusal to obey orders. There is nothing in the record to show a practice of giving such preferred assignments to new employees who had not undergone the rigors of uniformed patrol. If a preference for a particular kind of assignment entitled those who quit less preferable jobs to unemployment compensation, state unemployment compensation funds would long since have been exhausted. *See Hollingsworth v. District of Columbia*

Unempl. Comp. Bd., D.C.App., 375 A.2d 515 (1977), and cases cited therein. *See also Trans World Airlines, Inc. v. Hardison,* —— U.S. ——, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).

**6.** *See Flood v. Kuhn,* 443 F.2d 264, 268 (2d Cir. 1971), *aff'd,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); *United Mine Workers v. NLRB,* 87 U.S.App.D.C. 230, 231, 184 F.2d 392, 393 (1950); *NLRB v. Nat'l Maritime Union,* 175 F.2d 686, 692 (2d Cir. 1949), *cert. denied,* 338 U.S. 954, 70 S.Ct. 492, 94 L.Ed. 589 (1950).

**7.** *Hollingsworth v. District of Columbia Unemp. Comp. Bd., supra* note 5; *General Railway Signal Co. v. District Unemp. Comp. Bd.,* D.C.App., 354 A.2d 529 (1976).

instruction to cut his hair and shave his beard and thereby lost his job. A majority of the court reversed the agency but purely on grounds peculiar to the state statute. In his persuasive dissent, Justice Pomeroy (joined by Chief Justice Jones) pointed out that an employer can justifiably insist that the appearance of employees should not reflect unfavorably upon the company in the minds of large numbers of citizens, *id.* at 602, and that in this respect the conclusion of the *Lattanzio* majority was at odds with the leading case in this jurisdiction, where the court observed:

" 'Perhaps no facet of business life is more important than a company's place in public estimation. That the image created by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance. Good grooming regulations reflect a company's policy in our highly competitive business environment. Reasonable requirements in furtherance of that policy are an aspect of managerial responsibility.' *Fagan v. National Cash Register Co.,* 157 U.S.App.D.C. 15, 481 F.2d 1115, 1124–25 (1973)." [*Id.,* footnote omitted.]

In the instant case, however, we need not pass on the constitutional issue petitioner has raised because this question has already been decided against petitioner in an action brought by him in the United States District Court, where his complaint directly assailed the constitutionality of the application to him of General Order 1102.3. That court, in a lengthy opinion, found no merit in petitioner's constitutional position, even though it was willing to assume that petitioner's election to permit his hair and whiskers to grow unrestrained was motivated by a bona fide religious vow. *Marshall v. District of Columbia,* 392 F.Supp. 1012 (D.D.C.1975), *aff'd on appeal,* 559 F.2d 726 (D.C. Cir. 1977).

In affirming the federal district court's decision that the regulations were not arbitrary and capricious and did not violate petitioner's First Amendment religious freedom, the court, relying on *Kelley v. Johnson,* 425 U.S. 238, 245–47, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), also observed

that the hair regulation was rationally connected to "the effective functioning of the [police] department" and to the specific objectives that the District of Columbia sought to achieve by its choice of organization, dress and equipment for its policemen. The grooming requirements are directly related to discipline, uniformity and to *esprit de corps.* Prior to such regulation "relaxed grooming standards had resulted in the deterioration of the appearance of [police] officers" (affidavit of then Assistant Police Chief, Maurice Cullinane). All these standards compose the method of organizing its police force that the government of the District of Columbia has selected as part of its objective to promote the safety of persons and property and in doing so appellant's constitutional rights under the fourteenth amendment were not violated. [*Marshall v. District of Columbia, supra,* at 727; footnote omitted.]

■ Even if we were disposed to disagree with this decision—which we are not—we believe that in the interest of comity, we should refrain from considering issues of fact and law identical to those resolved against petitioner in his federal court action.[8]

We turn now to the second objection advanced by petitioner to the validity of General Order 1102.3, *viz.,* its asserted conflict with the District of Columbia Human Rights Law. This ordinance, adopted by the District Council on November 17, 1973 as Regulation 73–22, prohibits discrimination in employment, *inter alia,* by reason of "race, color, religion, national origin, sex, age, marital station, *personal appearance,*" etc., (emphasis supplied).

■ Petitioner urges that the General Order on hair length discriminates on the basis of "personal appearance" and is not so

---

8. *Hilton Hotels Corp. v. Weaver,* 117 U.S.App.D.C. 83, 325 F.2d 1010 (1963).

necessary to the police department's operation as to qualify for the "business necessity" exception under § 1.B.2 of the Employment Guidelines for the Human Rights Law.[9] We need not reach that contention because it is inapposite here, as agency regulations or guidelines must not be inconsistent with the basic act. Here, the Council's regulation itself (34 D.C.R.R. § 3.1) defines the term "personal appearance" as follows:

> The outward appearance of any person, irrespective of sex, with regard to bodily condition or characteristics, manner or style of dress and manner or style of personal grooming, including, but not limited to, hair style and beards. It shall not relate, however, to the requirement of cleanliness, uniforms, or prescribed standards . . . when uniformly applied to a class of employees, for a reasonable business purpose; or when such bodily conditions or characteristics, or style or manner of dress or personal grooming presents a danger to the health, welfare or safety of any individual.[10]

■ We think it clear that the standards of appearance for uniformed officers set forth in the challenged departmental order are amply supported not only because "uniformly applied to a class of employees for a reasonable business purpose" but also because a policy which would permit patrolmen to let their hair and whiskers grow wild would present a danger to the public.

The administrative history of the departmental order was summarized in an affidavit of Police Chief Cullinane. The following excerpts disclose that the draftsmen of the order had both these objectives in mind:

> One of the responsibilities of the force is to act as a deterrent to crime and as a visible symbol of lawful authority. In order to fulfill this responsibility, it is necessary that uniformed officers on the street be highly visible and quickly recognizable as police officers. For this reason, it is necessary for officers to have a distinctive and uniform appearance. The obvious way to achieve this end is to require officers to wear a uniform, which is a tradition almost as old as police departments. . . . One of the most distinctive features of a uniform is the hat, particularly today, when few people wear hats. . . .

> \*   \*   \*   \*   \*   \*

> While the wearing of a uniform goes far towards creating a uniform appearance, grooming was also a factor considered by the committee in drafting the order. This is an era of widely divergent styles of grooming among the general public, and the committee reviewed dozens of photographs of hair styles in trying to reach an acceptable standard for appearance. It was considered important that officers be able to project a neutral image that would not provoke a strong negative reaction from any segment of the community, as well as an image that was sufficiently compatible with the traditional look of the uniformed officer so as not to raise questions in the minds of citizens as to whether a uniformed officer was really a police officer, in spite of his uniform. It was felt by the committee that the standards set by the order are a reasonable compromise between the need of the department for its uniform members to create an identifiable, acceptable police image, and the desire of individual officers to have their grooming express their personal tastes.

> Yet another concern of the department in considering uniform and appearance standards is the issue of discipline. Police officers must often take action in

---

9. 22 D.C. Reg. 7027 (1976). These guidelines were adopted by the District of Columbia Commission on Human Rights and the District of Columbia Office of Human Resources, as authorized by 34 D.C.R.R. § 29.1(c) (1973).

10. Petitioner cites a letter of James Baldwin, Director of the District of Columbia Office of Human Rights, dated Apr. 22, 1975, suggesting that the ". . . hair length regulation is not a bona fide occupational qualification under Title 34 that is reasonably necessary to the normal operation of the Metropolitan Police Department. . . ." The author of the letter apparently ignored the text of the definition subsection, 34 D.C.R.R. § 3.1, quoted here.

situations of stress and danger. It is imperative for officers to have a high degree of discipline, to increase the likelihood that they will respond properly as individuals, as well as in situations in which they must act as a team. . . .

One. means of instilling discipline is by requiring adherence to reasonable rules. The general order drafted by the appearance committee does set reasonable rules for appearance, rules which promote the effective functioning of this police department. . . .

Accordingly the validity of the General Order must be sustained and the objections of petitioner rejected.

*Affirmed.*

KELLY, Associate Judge, dissenting:

There has never been a question, to me, that petitioner's dismissal from the police force because he would not conform to constitutionally valid police regulations was warranted. Indeed, the United States District Court for the District of Columbia so held several years ago. *Marshall v. District of Columbia,* 392 F.Supp. 1012 (D.D.C.1975).[1] My position is that a refusal to conform to the regulations which is motivated by a bona fide religious belief is not misconduct[2] for purposes of unemployment compensation.

The appeals examiner's findings are as set forth in the majority opinion, and his conclusion was that petitioner's failure to obey the regulations was insubordination which constituted misconduct under the law. The petitioner appealed to the Board which affirmed and adopted the appeals examiner's decision, one Board member dissenting. This petition for review followed.[3]

While the record supports the majority of the examiner's findings, it is silent on whether the petitioner was advised that his grooming habits would have to be modified once his tour as an undercover agent ended. There is also no evidence that the petitioner was misled into believing his appearance would be acceptable in all his future police assignments. Thus, the examiner's comments about what petitioner should have anticipated with respect to hair regulations are unsupported by evidence of record. In fact, the regulations which petitioner violated was not officially promulgated until well after his hiring.[4]

The record also discloses that petitioner made an unsuccessful attempt to obtain a waiver from the regulation and that he was willing to serve in several positions, *e. g.,* dispatcher or harbor policeman, which he believed would not require cutting his hair or shaving his beard. Such facts are relevant in light of the definition of misconduct which we have adopted that it

> must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. [48 Am.Jur. Social Security, Unemployment Insurance, Etc., § 38 (1943) (footnotes omitted).][5]

---

1. *Aff'd on appeal,* 559 F.2d 726 (D.C. Cir. 1977). In that suit, petitioner sought reinstatement to the police department and back pay based upon the constitutional rights of religious freedom, equal protection and due process. The court on motions for summary judgment ruled against petitioner on the constitutional issues and it refused on comity to pass on petitioner's allegations that the police department lacked authority to issue the hair regulation and that the regulation violated the District of Columbia Human Rights Law.

2. D.C. Code 1973, § 46–310(b).

3. D.C. Code 1973, § 46–312 (Supp. II, 1975), provides that review of DUCB decisions shall be in accordance with the District of Columbia Administrative Procedure Act, D.C. Code 1973, § 1–1501 *et seq.*

4. Metropolitan Police Department General Order No. 1102.3 was issued on December 8, 1974.

5. *Hickenbottom v. District of Columbia,* D.C. App., 273 A.2d 475, 477–78 (1971).

In my judgment this record does not support a finding of misconduct.[6] We have here an unfortunate and irreconcilable conflict between petitioner's religious beliefs and the police department's hair regulations, and, while I do not suggest that the police department did not have the authority to discharge petitioner, I would hold that petitioner's actions in refusing to violate this concededly bona fide religious vow, after having been hired and employed with long hair and a beard, did not constitute misconduct within the meaning of D.C. Code 1973, § 46–310(b).

---

6. *See, e. g., Green v. District Unemployment Compensation Bd.,* D.C.App., 346 A.2d 252 (1975); *Simmons v. District Unemployment Compensation Bd.,* D.C.App., 292 A.2d 797 (1972); and *Hickenbottom v. District of Columbia, supra.*