**Rolando Bermudez TURCIOS, Appellant,**

v.

**UNITED STATES SERVICES INDUSTRIES, Appellee.**

No. 95–CV–992.

District of Columbia Court of Appeals.

Argued May 21, 1996.

Decided July 18, 1996.

Diana Orantes Ceresi, with whom Orrin Baird and Eunice Washington were on the brief, for appellant.

Joel I. Keiler, for appellee.

Before FERREN, TERRY, and REID, Associate Judges.

FERREN, Associate Judge:

Appellant Turcios, a janitor, sued United States Services Industries ("USSI") for violating the D.C. Human Rights Act (the "Act"), D.C.Code §§ 1–2501, *et seq.* (1992 Repl.), by requiring him to cut his hair, or else wear a hat at work, or instead transfer to another USSI work location. On appeal, Turcios contends (1) the trial court erred as a matter of law in allowing the jury to consider USSI's affirmative defense under the "prescribed standards" exception of the Act, D.C.Code § 1–2502(22); (2) the jury's verdict was contrary to undisputed record evidence; and (3) reversal is required because opposing counsel improperly remarked on Turcios' role in a dispute between Local 82, Service Employees International Union (the "Union"), and USSI. We affirm.

## I.

Turcios worked for USSI from March 13, 1992, until May 26, 1993, from 6:00 p.m. to midnight, mopping floors and taking out the garbage at Washington Harbour, an office building which had contracted with USSI for janitorial services. USSI's written personal appearance policy, in effect during Turcios' employment, provided:

Good hygiene is important and includes the following:

— Neat hair style

— Clean shaven face (trimmed mustache is acceptable)

— Black shoes or black tennis shoes are recommended

— No hats allowed inside of building [1]

USSI had no specific written policy with respect to hair length.

In May 1993, Turcios had his hair cut into a style that left a tail of hair at the nape of his neck. Mauricio Portillo, Turcios' immediate supervisor, asked Turcios if there were anything he could do about his hair; requested Turcios to "cooperate"; told Turcios that Joel Rivas, another supervisor with a similar haircut, had cooperated by cutting his hair; and informed Turcios that if he did not cooperate, USSI would lose its contract with Washington Harbour and all the employees would lose their jobs. When Turcios replied that he did not want to cut his hair, Portillo told Turcios that he could either wear a hat during work or transfer to another USSI location. Two days after his conversation with Portillo, Turcios stopped working for USSI.[2]

USSI's contract with Washington Harbour provided that USSI would "assure that its employees are neatly attired at all times in a manner that will reflect credit both upon the Contractor [USSI] and the Building in which they are working [Washington Harbour]." The contract further provided that either party could terminate the contract upon sixty days' written notice, and that if USSI failed to cure, within five days, any failure to perform its obligations under the contract, Washington Harbour could terminate the agreement immediately upon written notice.

## II.

Preliminarily, we address USSI's claim that Turcios' appeal should be dismissed because it was not timely filed. The jury returned its verdict on March 15, 1995, and judgment was entered outside the presence of the parties and mailed to them on March 29, 1995. Turcios filed a motion for new trial on April 12, 1995. On July 19, 1995, Judge Dorsey ruled that the new trial motion had not been timely filed under Superior Court Rule 59(b) (requiring filing within ten days of the date judgment is entered) and accordingly treated Turcios' motion as a request for relief from judgment under Rule 60(b). He then denied the motion. Turcios filed his notice of appeal on July 28, 1995.

■ Although a timely filed Rule 59 motion tolls the thirty-day period for filing a notice of appeal from a court's final order, a Rule 60(b) motion does not. *See Fleming v. District of Columbia*, 633 A.2d 846, 848 (D.C. 1993). USSI contends that, because Judge Dorsey treated Turcios' motion under Rule 60(b), the period for filing an appeal was not tolled. In this connection, USSI points out that Turcios has not appealed the judge's ruling that his motion was untimely filed under Rule 59 on April 12, 1995. Therefore, USSI argues, because Turcios filed this appeal on July 28, 1995, more than thirty days after the March 29, 1995 judgment, the appeal cannot go forward.

In his opening brief, Turcios indicates that he has chosen not to appeal the trial court's ruling that his new trial motion was untimely—*i.e.*, that the motion in effect was a request for relief from judgment under Rule 60(b)—because, as he sees it, the ruling under Rule 60(b), rather than under Rule 59, did not "substantially affect his rights." In response to USSI's assertion that the appeal should be dismissed as untimely because Rule 60(b) did not toll the period for appeal, Turcios argues in his reply brief that the crucial fact is the trial court's "obvious and indisputable error in arithmetic," which can-

---

1. Evidence was presented that the Spanish version of USSI's policy provided, "Good hygiene is important and it can be done in the following manner. Clean hair and well-combed. Well shaved face and a trim mustache is also acceptable. Black shoes or black sneakers. Hats are not acceptable in the building."

2. Turcios testified that he had been fired on May 26, 1993. Portillo testified that Turcios had quit. The issues presented on appeal do not depend on resolving this conflict.

not "deprive this Court of its jurisdiction of the appeal."

Turcios first explains his calculation:

[U]nder Superior Court Civil Rule 6(a)[,] when a time limit prescribed under the rules is less than eleven days, as here [under Rule 59(b) (ten days after entry of judgment)], the computation of that time *excludes* intervening Saturdays and Sundays. Both the formal Judgment and the docket sheet indicate that the judgment was entered on March 29, [1995] not on March 27[, 1995] as Judge Dorsey erroneously presumed in his order. Accordingly, pursuant to the rules, the ten day period for filing a motion for new trial ended on April 12, the date that [Turcios] filed his motion. Furthermore, as Judge Dorsey noted in his order, when as here a judgment is rendered outside of the presence of the parties and is mailed to them, an additional three days is added to the filing deadline which thereby became April 15, 1995.

He then adds that, because "the trial court took three months to issue its ruling on [the] motion, during which [time Turcios] had no reason to believe that the tolling provisions of [D.C.App.] Rule 4 were inapplicable, equitable principles alone preclude a result that would deny [Turcios] the ability to bring this appeal. *See Thompson v. INS*, 375 U.S. 384, 386–87 [84 S.Ct. 397, 398–99, 11 L.Ed.2d 404] (1964) [ (per curiam) ]."

Under the circumstances, we do not believe Turcios' failure to contest on appeal the court's refusal to apply Rule 59, rather than Rule 60, is fatal to this appeal. It is apparent that Turcios has sought this court's ruling on the merits—which both parties have addressed—despite his failure to address the threshold question whether the trial court used the proper rule for considering his new trial motion. We decline to dismiss Turcios' appeal simply because his counsel, in addressing the merits, neglected to realize the tolling issue had to be resolved first. Dismissal of the appeal on that basis, when we can see clear error in the trial court's calculation under Rule 59, would be contrary to our policy of construing parties' pleadings in order to "do substantial justice." Super. Ct. Civ. R. 8(f) (1996); *cf.* Super.Ct.Civ.R. 1 (1996) (rules "shall be construed and administered to secure the just, speedy and inexpensive determination of every action"); *Industrial Bank v. Allied Consulting Serv's*, 571 A.2d 1166, 1167 (D.C.1990) (Superior Court Rules, like the corresponding federal rules, "'reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome[,] and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)); *Tenants of 2301 E Street v. District of Columbia Rental Housing Comm'n*, 580 A.2d 622, 624 n. 3 (D.C.1990) (suggesting that, on remand, hearing examiner could afford landlord relief despite landlord's failure to cross-appeal); *Wallace v. Warehouse Employees Union No. 730*, 482 A.2d 801, 808–09 (D.C.1984) (rules of civil procedure should be liberally construed).

■ Concerns for judicial economy might dictate a different result if the tolling question were complicated, but the analysis here—as Turcios' calculation makes clear—is quite easy. We agree with Turcios' reading of the record and with his analysis of the applicable Superior Court Civil Rules. *See* Super.Ct.Civ.R. 6(a), 59(b). Turcios' new trial motion was timely filed within the Rule 59(b) time period, as computed under Rule 6(a). The thirty-day period in which Turcios could file an appeal was therefore tolled during the period the court considered the new trial motion, and thus the appeal was timely filed. Accordingly, we turn our attention to the merits.

### III.

#### A.

D.C.Code § 1–2512 forbids discrimination "against any individual, with respect to his [or her] compensation, terms, conditions, or privileges of employment" (among other things), on the basis of "personal appearance." Turcios contends the trial court erred in allowing USSI to proceed with its affirmative defense, namely, that USSI had not discriminated against him on the basis of his

personal appearance because its conduct fell within the "prescribed standards" exception.[3] D.C.Code § 1–2502(22) provides:

> "Personal appearance" means the outward appearance of any person, irrespective of sex, with regard to bodily condition or characteristics, manner or style of dress, and manner or style of personal grooming, including, but not limited to, hair style and beards. *It shall not relate, however, to the requirement of* cleanliness, uniforms, or *prescribed standards,* when uniformly applied for admittance to a public accommodation, or *when uniformly applied* to a class of employees for a *reasonable business purpose;* or when such bodily conditions or characteristics, style or manner of dress or personal grooming presents a danger to the health, welfare or safety of any individual. (Emphasis added.)

To fall within the "prescribed standards" exception, therefore, the statute required USSI to demonstrate: (1) the existence of prescribed standards; (2) uniform application of the standards to a class of employees; and (3) a reasonable business purpose for the prescribed standards. The evidence presented at trial supported a finding that USSI uniformly applied its "no tail hairstyles" rule to all employees at the Washington Harbour facility. Portillo testified that the only other USSI employee who had a similar hairstyle was Joel Rivas, who had cut his hair upon Portillo's request. Turcios argues, however, that USSI failed to establish that its grooming rules were "prescribed standards" having a "reasonable business purpose."

**B.**

■ Turcios initially stresses that USSI's written personal appearance policy fails to meet the prescribed standards requirements because it lacked specific, clearly defined, measurable criteria. He argues that a "clear and concise written rule" is necessary to protect employees from employers' arbitrary and unreviewable decisions about personal appearance. *See Boyce v. Safeway Stores, Inc.,* 351 F.Supp. 402, 404 (D.D.C.1972) (not

sex discrimination to establish different clear and concise grooming rules for male and female employees). Turcios finds implicit support for his argument in three of our prior decisions: *Atlantic Richfield Co. v. D.C. Comm'n on Human Rights,* 515 A.2d 1095 (D.C.1986); *Marshall v. District Unemployment Compensation Bd.,* 377 A.2d 429 (D.C.1977); and *Kennedy v. District of Columbia,* 654 A.2d 847 (D.C.1994).

In *Atlantic Richfield,* 515 A.2d at 1100, we rejected the employer's argument that discriminatory treatment of the employee had been justified because she had worn "provocative and inappropriate" clothes that did not conform with normal standards for office attire. We upheld the Commission on Human Rights' finding that the employer's unwritten standards for office attire did not constitute a "uniformly prescribed standard of dress applied for a reasonable business purpose." *Id.* In contrast, Turcios offers, as examples of prescribed standards, the grooming regulations challenged in *Marshall* and *Kennedy.* The written standards in those cases clearly specified the length and style of hair prohibited. *See Kennedy,* 654 A.2d at 854 ("well-trimmed mustache ... shall not extend more than 1/4 inch beyond the corners of the mouth"); *Marshall,* 377 A.2d at 430 n. 1 ("hair on the back of the head shall not extend over the shirt collar").

While we recognize that unwritten standards, as in *Atlantic Richfield,* will not suffice, we do not believe an employer's written grooming policy—to be a "prescribed standard"—must be as specific as the policies described in *Kennedy* and in *Marshall.* USSI relied on criteria contained in a general written paragraph—in particular, "Neat hair style" in the context of "Clean shaven face (trimmed mustache is acceptable)"— supplemented by the specific "no ponytail" interpretation of that written policy provided by Turcios' supervisor, Portillo. We believe that (1) the two written criteria for hair on the head and face evidence a communicated general rule that USSI employees at Washington Harbour will conform to traditional

---

**3.** At trial, USSI also sought to rely on the "business necessity" exception pursuant to D.C.Code § 1–2503. The trial court found that USSI had

not presented evidence sufficient to submit the case to the jury under that exception.

grooming styles, and that (2) the supervisor's application of this written policy to forbid ponytails was not an unreasonable or unforeseeable interpretation of that policy. Under the circumstances, therefore, we believe these combined requirements were sufficient to satisfy the "prescribed standards" element of the statutory exception.

## C.

Turcios next contends that USSI failed to demonstrate a "reasonable business purpose" for its grooming standards. Turcios relies on interpretation of the "business necessity" exception, D.C.Code § 1–2503(a), to support his understanding of what USSI was required to prove to demonstrate a "reasonable business purpose" for its "no ponytail" personal appearance policy. D.C.Code § 1–2503(a) provides:

> Any practice which has a discriminatory effect and which would otherwise be prohibited by this chapter shall not be deemed unlawful if it can be established that such practice is not intentionally devised or operated to contravene the prohibitions of this chapter and can be justified by business necessity. Under this chapter, a "business necessity" exception is applicable only in each individual case where it can be proved by a respondent that, without such exception, such business cannot be conducted; a "business necessity" exception cannot be justified by the facts of increased cost to business, business efficiency, the comparative characteristics of 1 group as opposed to another, the stereotyped characterization of 1 group as opposed to another, and the preferences of co-workers, employers, customers or any other person.

Turcios relies on this language to argue that Washington Harbour's preference for neatly groomed janitors, and its right to terminate its contract with USSI for any reason, cannot justify USSI's "no ponytail" personal appearance policy.

■ Turcios' argument fails because the "business necessity" exception is different from, and altogether independent of, the "prescribed standards" exception at issue here. *Cf. Marshall,* 377 A.2d at 433–34

("business necessity" exception under Human Rights guidelines inapposite when employer alleged discriminatory conduct based on personal appearance was uniform application of prescribed standards for a "reasonable business purpose"). The statute subjects employers claiming a business necessity exception to stricter statutory criteria than the limitations applicable to employers who claim their prescribed standards serve a reasonable business purpose. Specifically, an employer who seeks to establish a "reasonable business purpose" under the "prescribed standards" exception only has to show an objectively reasonable justification for uniformly regulating its employees' personal appearances; the business purpose need not reach the status of a "necessity," failing which the "business cannot be conducted." D.C.Code § 1–2503(a). *Cf. id.* at 434 (Metropolitan Police Department grooming requirements related to discipline, uniformity, and *esprit de corps* constitute reasonable business purpose); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1120–21 (11th Cir.1993) (upholding grant of summary judgment in favor of employer where employee failed to present sufficient evidence to create genuine issue of material fact that rule prohibiting firefighters from wearing short beards was not business necessity required to ensure safety and health of firefighters).

Both the plain language of the Act and the policy that underlies it support this reading of the statute. The everyday meanings of the words "business necessity" and "reasonable business purpose," respectively, suggest that the first term indicates a stricter standard than does the second. Furthermore, the "business necessity" exception is more difficult to meet because it is not limited, as the "prescribed standards" exception is, to discrimination based on personal appearance; rather, the "business necessity" exception can be used to justify an employer's discriminatory treatment of employees on any basis, including race, gender, and religion. *See* D.C.Code §§ 1–2502(22), –2503. Finally, the lack of overlap between the two exceptions is evidenced by the fact that the "business necessity" exception is an exception entirely by itself, whereas the "reasonable business pur-

pose" requirement is not itself an exception but only one of three criteria for satisfying the "prescribed standards" exception. Nothing suggests that the "business necessity" exception is a subset of—a criterion for meeting—the "prescribed standards" exception.

### D.

■ Given this understanding of "reasonable business purpose," we conclude that USSI presented sufficient evidence from which a jury could find that USSI had a reasonable business purpose for its grooming rule. Joel Felrice, vice president of USSI, testified that Washington Harbour expressly had requested that USSI employees "look sharp at all times." Portillo testified that he had received complaints from Washington Harbour about the USSI workers' appearance. Portillo added that if he allowed employees to wear ponytail hairstyles, he feared USSI's contract with Washington Harbour would be jeopardized. This evidence was sufficient for the jury to find that USSI had a reasonable business purpose for its no-tail hairstyle rule.

We therefore conclude that the trial court did not err in submitting to the jury USSI's affirmative defense: a prescribed standard, uniformly applied, for a reasonable business purpose.

### IV.

■ Turcios also argues that the trial court erred in denying his motion for directed verdict because the jury's verdict was contrary to the great weight of the evidence. Appellate review of the denial of a motion for directed verdict is limited because of the "trial court's unique opportunity to consider the evidence in the context of a living trial," as well as the "deference properly given to the jury's determination of such matters of fact as the weight of the evidence". *Richbow v. District of Columbia*, 600 A.2d 1063, 1066 (D.C.1991). We therefore review the evidence in the light most favorable to the party against whom the motion was made, giving that party the benefit of all reasonable inferences. *See Vuitch v. Furr*, 482 A.2d 811, 813 (D.C.1984). "If reasonable [persons] could

differ on the outcome of the case, it must be sent to the jury." *Id.*

■ An employer may not "discriminate against any individual, with respect to his [or her] compensation, terms, conditions, or privileges of employment ... or to limit, segregate, or classify his [or her] employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his [or her] status as an employee." D.C.Code § 1–2512(a)(1). According to the District of Columbia Employment Guidelines for Human Rights Law, 4 DCMR § 506.1 (1995), the terms, conditions, rights, and privileges of employment include the rotation of shifts, the hours of work, and dress and appearance. Drawing on the language of D.C.Code § 1–2512(a)(1), the judge instructed the jury that it was unlawful discrimination for an employer to "limit, segregate, or classify his employee in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee."

Portillo had offered to allow Turcios to transfer from the Washington Harbour location to a different USSI location "working under the same hours, under the same salary, and closer to home." Alternatively, Portillo had offered to allow Turcios to wear a hat while working at Washington Harbour. Turcios worked for an employer who, as he knew, had employees at many locations. The jury was not required to accept Turcios' position that, in effect, he had a vested interest in working at Washington Harbour. The jury reasonably could have found that nothing USSI did "adversely affect[ed]" Turcios' status as an employee since his job was not in jeopardy and he had a reasonable opportunity to continue working for his employer, at a comparable location, without cutting off his ponytail. Alternatively, the jury could have found that any of USSI's actions that "limit[ed], segregat[ed] or classif[ied]" Turcios on the basis of his personal appearance fell within the "prescribed standards" exception. See *supra* part III. Accordingly, the evidence easily supported the finding that no discrimination had occurred.

## V.

Turcios argues, finally, that references to his role in the ongoing dispute between the Union and USSI—mentioned during USSI's opening statement and closing argument, as well as by USSI witnesses during the trial—improperly influenced the jury's verdict. Turcios' argument, essentially, is that the evidence of his Union contacts was irrelevant and confusing to the jury and, further, that because the evidence was improperly admitted, USSI's opening statements and closing arguments heightened the resulting prejudice.

 The determination of what evidence is relevant, and what evidence may tend to confuse the jury, is left to the sound discretion of the trial court. *See Rogers v. United States,* 566 A.2d 69, 71–72 (D.C.1989) (en banc). Nonetheless, even assuming—for the sake of argument—that the trial court erred in admitting evidence of Turcios' participation in the Union, and also erred in allowing counsel for USSI to refer to the ongoing dispute between USSI and the Union in his opening statement and closing argument, any such error was harmless. Just before counsel made closing arguments, the trial court instructed the jury:

> Now ladies and gentlemen, let me make it absolutely clear: This is a case about the Plaintiff's complaint of discriminatory conduct on the part of the Defendant. This is not a case about unions and managements, nor is this a case about the history between this union and this management. This is a case about the Plaintiff's accusation of discriminatory conduct on the part of the Defendant.

Presuming, as we must in the absence of any indication to the contrary, that the jury followed the judge's instructions, *see Swanson v. United States,* 602 A.2d 1102, 1107 (D.C.1992); *Robinson v. Sarisky,* 535 A.2d 901, 908 (D.C.1988), we conclude that any error from admitting evidence of the union dispute does not require reversal. *See Scott v. United States,* 619 A.2d 917, 926 (D.C. 1993) (prosecutorial error in asking questions not reversible given trial court's prompt curative instruction).

*Affirmed.*